# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ian H. Levin | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 2764 | **DATE** | 4/16/2001 |
| **CASE TITLE** | Ricardo Bernales vs. Cook County | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Enter memorandum opinion and order on defendant's motion for summary judgment. Defendant's motion for summary judgment [37-1] is granted. The cause is dismissed with prejudice.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

| | |
|---|---|
| SM | courtroom deputy's initials |

2
number of notices

APR 2 4 2001
date docketed

docketing deputy initials

4/17/2001
date mailed notice

SM
mailing deputy initials

Document Number

5 1

Date/time received in central Clerk's Office

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

RICARDO BERNALES,           )
                            )
    Plaintiff,          )
                            )
v.                          )    Case No. 96 C 2764
                            )
COOK COUNTY,                )    Magistrate Judge Ian H. Levin
                            )
    Defendant.          )
                            )

APR 2 4 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff Ricardo Bernales ("Plaintiff") seeks recovery in a Second Amended Complaint against Defendant Cook County ("Defendant") for national origin discrimination and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000 *et seq*. Pending before the court is Defendant's motion for summary judgment pursuant to Fed.R.Civ.P.56. For the reasons set forth below, the court grants Defendant's motion for summary judgment.

## BACKGROUND FACTS

Plaintiff, who is a physician, began working in the Allergy/Immunology Division of the Department of Pediatrics at Cook County Hospital in August, 1978. Def.'s Local Rule 56.1(a)(3) St. ¶ 1. On January 26, 1993, Plaintiff sent a letter to Dr. Agnes Lattimer, the Medical Director of Cook County Hospital, expressing an interest in the chairman position of the Division of Pediatric Allergy/Immunology. *Id*. ¶ 2. Plaintiff understood that the position would become vacant on May 1, 1993, when the current chairman, Dr. Lim, planned on retiring. *Id*. On March 31, 1993, Plaintiff applied for the chairman position when he sent a letter accompanied by his curriculum vitae to Dr. Rosita Pildes, the Interim Chairman of the Department of Pediatrics. *Id*.

¶ 3. Dr. James Moy also applied for the chairman position. *Id.* ¶ 4.

After Plaintiff applied for the position, Dr. Pildes had a conversation with Dr. Philip

Ziring, who had been hired as the Chairman of the Department of Pediatrics, but who did not

begin working at Cook County Hospital until June, 1993. *Id.* ¶ 5. Dr. Pildes informed Dr. Ziring

that Plaintiff and Dr. Moy were the only two applicants for the chairman position. *Id.* Dr. Ziring

indicated that he was not ready to make a decision regarding the chairman position and asked that

Dr. Pildes make no decision on the matter. *Id.* Dr. Pildes advised Plaintiff of the situation and

told him that he could discuss the chairman position with Dr. Ziring after he began working at

Cook County Hospital. *Id.*

Dr. Pildes retired from Cook County Hospital on May 29, 1993. *Id.* ¶ 6. Before leaving

her position, Dr. Pildes discussed both Plaintiff's and Dr. Moy's applications. *Id.* Dr. Pildes told

Dr. Ziring that Plaintiff was devoted to patient care, but that during the fifteen years she had

worked with him, he had not demonstrated any academic interests. *Id.* Dr. Pildes also told Dr.

Ziring that Plaintiff had not received any research grants, participated in any teaching initiatives

or conducted any outreach activities. *Id.* Dr. Pildes told Dr. Ziring that Dr. Moy was "well

qualified" for the position. *Id.*

Dr. Ziring identified four missions of the hospital and department. *Id.* ¶ 7. First,

department doctors were responsible for providing patient care on both an inpatient and

outpatient basis. *Id.* Second, doctors in the department were responsible for the educational

programs needed to train residents, fellows, and medical students. *Id.* Third, department doctors

were responsible for conducting research and obtaining research grant funds, particularly in those

areas of interest to under served children. *Id.* Fourth, department doctors were responsible for

utilizing county resources while at the same time taking steps to develop initiatives for new programs and services through outreach activities. *Id.*

After Dr. Ziring began working at Cook County Hospital, he met with and interviewed Plaintiff for the chairman position by engaging in discussions with him about his qualifications, his interests, the future of the department, and other interests impacting on the department. *Id.* ¶ 8. Dr. Ziring also discussed Plaintiff's leadership abilities and other qualifications for the position with other department doctors who had worked extensively with Plaintiff, including Dr. Pildes, Dr. Zuba, Dr. Rao, and Dr. Lim. *Id.* Dr. Ziring observed Plaintiff's work and reviewed his personnel file. *Id.* Moreover, Dr. Moy, the only other candidate for the position, who did not work at Cook County Hospital (i.e., he worked at Rush-Presbyterian-St. Luke's Medical Center) was also considered for the position. However, Dr. Moy was subjected to a more structured interview process. *Id.* ¶ 9.

In considering Plaintiff's and Dr. Moy's qualifications for the position, Dr. Ziring determined that the successful candidate should possess the following characteristics:

> The position of chief of division, in the Department of Pediatrics, requires a variety of important characteristics.
>
> The head of the division requires them to be an excellent clinician with expertise in a particular area that the division is responsible for. It requires them to be an excellent educator, to have experience and qualifications in research, and to be aware of the administrative requirements in the position.
>
> I guess I would summarize by saying that the position of division chief is a leadership position. It's not one that has primary responsibility in any one of those particular areas, such as a major focus on patient care or a major focus on education. But it has to encompass all of the areas of concern of the division, and so it's a leadership position. *Id.* ¶ 10.

Dr. Ziring further testified that:

. . . this was a leadership position in the department, this was not a position looking for a doctor to provide more hands-on clinical services to children. It was a person to develop new programs, new educational programs, new services, grant programs, new educational programs, and new relations with Rush [Hospital] which were evolving at that time. *Id.*

On August 16, 1993, Dr. Ziring recommended that Dr. Moy be appointed to the position of department chairman, which would be effective on September 13, 1993. *Id.* ¶ 11. In his recommendation, Dr. Ziring stated, in pertinent part, that:

Doctor Moy is certified by the American Board of Pediatrics and American Board of Allergy/Immunology, and has been in the Department of Allergy/Immunology/Microbiology at Rush-Presbyterian-St. Luke's Medical Center for the last six years. He is highly regarded as a clinician and teacher and is currently funded by the NIH in the study of eosinophil function. Dr. Moy will be a full-time employee of the Department of Pediatrics at Cook County Hospital while he maintains his faculty appointment and research laboratory at Rush Medical School.

Doctor Moy is committed to expanding the availability of allergy/immunology services to other departments at Cook County Hospital and to building new asthma prevention and treatment services in the community. He promises to be an important new addition to the medical staff of Cook County Hospital. *Id.*

Dr. Ziring determined that Dr. Moy's qualifications exceeded those of Plaintiff, and Dr. Moy was appointed Chairman of the Allergy/Immunology Division in September, 1993. *Id.* ¶ 12. Dr. Ziring discussed his reasons for selecting Dr. Moy for the chairman position with Plaintiff. *Id.* ¶ 13. At that time, Plaintiff expressed his concern that he had not been promoted at Cook County Hospital after many years of service and felt that his salary was insufficient. *Id.* Dr. Ziring told Plaintiff that he would work hard to promote him to a position for which he qualified. *Id.*

On the same day that Dr. Ziring recommended Dr. Moy for the chairman position, he recommended that Plaintiff be promoted to the position of senior physician, which would be

effective on September 13, 1993. *Id.* ¶ 14. In his recommendation, Dr. Ziring stated, in pertinent part, that:

> During his long and loyal tenure at Cook County Hospital, [Plaintiff] has provided quality care for our patients, and since the retirement of Dr. Lim in May, he has been the Acting Chief of the division and has had sole responsibility for the patient care and resident education program in the Division of Allergy/ Immunology. *Id.*

Dr. Ziring's recommendation to promote Plaintiff was approved. *Id.*

On February 28, 1994, Plaintiff filed a charge of discrimination with the Illinois Department of Human Rights and the U.S. Equal Employment Opportunity Commission ("EEOC") (Charge No. 1994CA2233). *Id.* ¶ 15. Plaintiff alleged that he was discriminated against on the basis of his national origin (Peruvian) when he was not promoted to the chairman position. *Id.* Plaintiff, subsequently, amended his Charge, claiming that he was also discriminated when his performance was called into question by his supervisors and when he received negative comments on his performance evaluation. *Id.*

In the summer of 1995, the department chairman at Cook County Hospital were told that the Cook County Board was going to provide less money in fiscal year 1996 for operating Cook County Hospital. *Id.* ¶ 16. The department chairmen were instructed to cut their operating budgets by eight percent. *Id.* They were told that they could make recommendations on how to implement the eight percent reduction for their departments or alternatively, if a chairman did not make a recommendation, the departmental budget reductions would be made without their input from that department. *Id.*

Dr. Ziring reviewed the Department of Pediatrics budget to determine how he would make the mandatory budget reductions while having a minimal impact on patient care. *Id.* at ¶

17. Dr. Ziring recommended the elimination of five positions, three of which were full-time physicians. *Id.* The positions that Dr. Ziring sought to eliminate were:

1. the most senior administrative post in the department, then held by an employee named Susan Zinner, who is Caucasian ;

2. the position of Senior Attending Physician, Ambulatory Division, then held by Dr. Christine Odell, who is Caucasian;

3. the position of Senior Attending Physician, Division of Pediatric Cardiology, then held by Dr. David Gordon, who is Caucasian;

4. the position of Senior Attending Physician, Division of Allergy/Immunology, then held by Dr. Bernales, who is Peruvian; and

5. a part-time physician position in the Ambulatory Division.

*Id.* ¶ 18. In Dr. Ziring's recommendation to Lacy Thomas, Chief Financial Officer, he explained that:

> At your meeting with the department chairpersons last week, you asked that we delete whole programs from our Cook County Hospital budget in order to achieve the required savings, but I find that, after careful review our department's priorities, our responsibilities to our patients and teaching programs, I am unable to take that course. I propose that, as an alternative, certain positions within some of our department's programs be deleted in order to achieve the requisite savings. As you know, our department's budget consists primarily of physician personnel, and because we have only a limited number of vacant positions (high priority positions which are in the process of being filled), we have to delete some positions which are currently occupied by full-time or part-time physician employees. These positions are important ones in our department, but I believe that it is possible that at least some of their functions may be assumed through arrangements we have made with Rush.
>
> \*      \*      \*
>
> The remainder of our required savings will be obtained through delayed filling of vacant, but high priority positions in Pediatric Hematology/Oncology, reduction in funds spent on travel, consultants, etc. and expected attrition of personnel in FY 1995. *Id.* ¶ 19.

Dr. Ziring's recommendation was approved and on December 8, 1995, Plaintiff was notified of his termination. *Id.* ¶ 20.

Subsequently, Plaintiff filed a second charge of discrimination (Charge No. 1996CA1420) with the Illinois Department of Human Rights and EEOC alleging that in retaliation of having filed Charge No. 1994CA2233 he was terminated from his position as senior physician. *Id.* ¶ 22. In addition, on January 18, 1996, the Illinois Department of Human Rights issued a Notice of Dismissal for Lack of Substantial Evidence regarding Charge No. 1994CA2233 (discussed *supra*, p. 5). *Id.* ¶ 21.

## LEGAL STANDARDS

### I.  Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party had produced evidence to show that it is entitled to summary judgment, the party seeking to avoid such judgment must affirmatively demonstrate that a genuine issue of material fact remains for trial. *LINC Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 920 (7th Cir. 1997).

In deciding a motion for summary judgment, a court must "review the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Vanasco v. National-Louis Univ.*, 137 F.3d 962, 964 (7th Cir. 1998). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Nevertheless,

the nonmovant may not rest upon mere allegations, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See also Linc*, 129 F.3d at 920. A genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, 106 S.Ct. 2505 or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

This standard is applied with added rigor in employment discrimination cases, where issues of intent and credibility often dominate. *See Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993). "[S]ummary judgment is improper in a discrimination case where a material issue involves any weighing of conflicting indications of motive and intent." *Stumph v. Thomas & Skinner, Inc.*, 770 F.2d 93, 97 (7th Cir. 1985), *citing, Kephart v. Inst. of Gas Tech.*, 630 F.2d 1217, 1218 (7th Cir. 1980). Finally, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Freeman v. Madison Metro. Sch. Dist.*, 2000 WL 1640952, *3 (7th Cir. Nov. 2, 2000) (*quoting Anderson*, 477 U.S. at 255, 106 S.Ct. 2505).

## II.     National Origin Discrimination

Under Title VII, it shall be unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's . . . national origin." 42 U.S.C. § 2000e-2(a)(1). "The central

8

question in any employment-discrimination case is whether the employer would have taken the same action had the employee been of a different . . . national origin . . . and everything else had remained the same." *Carson v. Bethlehem Corp.*, 82 F.3d 157, 158 (7th Cir. 1996) (per curiam).

To prevail in an employment discrimination suit brought under Title VII, a plaintiff must show that the defendant had an intent to discriminate; such a showing may be made directly, or indirectly, through use of an inferential burden-shifting method. *Kormoczy v. Secretary, United States Dep't of HUD*, 53 F.3d 821, 823-24 (7th Cir. 1995). The direct method requires that a plaintiff present either direct or circumstantial evidence of discriminatory intent. *Wallace v. SMC Pneumatics*, 103 F.3d 1394, 1397 (7th Cir. 1997).

In the absence of direct or circumstantial evidence to prove discriminatory intent, a plaintiff may show discriminatory intent indirectly by using a burden-shifting method. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In order to use the burden-shifting method, a plaintiff must first establish a prima facie case of employment discrimination. *See Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1313 (7th Cir. 1989). Under the *McDonnell Douglas* framework, a plaintiff establishes a prima facie case of employment discrimination by showing by a preponderance of evidence that: (1) he is a member of a protected class; (2) he was qualified for the job in question or was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) the employer treated similarly situated employees outside the protected class more favorably. *Foster v. Arthur Anderson, LLP*, 168 F.3d 1029, 1035 (7th Cir. 1999); *see Bragg v. Navistar Int'l Transp. Corp.*, 164 F.3d 373, 376 (7th Cir. 1998).

If the plaintiff successfully makes the required prima facie showing, there's a

presumption that the plaintiff was discriminated against, and the defendant has the burden of showing that the decision that was made regarding the plaintiff's employment, was not, in fact, based on a discriminatory reason. *McDonnell Douglas*, 411 U.S. at 802-03, 93 S.Ct. 1817, 36 L.Ed.2d 668. The defendant must, therefore, articulate a legitimate, non-discriminatory reason for its decision. *Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 806 (7th Cir. 1999). The employer must produce "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742 (1993).

The burden then shifts back to the plaintiff "to present evidence that [the employer's] proffered reason is pretextual." *Vakharia*, 190 F.3d at 806-07. "Pretext . . . means a lie, specifically a phony reason for some action." *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 348 (7th Cir. 1997). The plaintiff need only "produce evidence from which a rational factfinder could infer that the [defendant] lied about its proffered reasons . . ." *Weisbrot v. Medical College of Wis.*, 79 F.3d 677, 682 (7th Cir. 1996). The following examples could be introduced as evidence of pretext: "(1) the proffered reasons are factually baseless; (2) the proffered reasons were not the actual motivation for the [adverse decision]; or (3) the proffered reasons were insufficient to motivate the [adverse decision]." *Wolf v. Buss, Inc.*, 77 F.3d 914, 919 (7th Cir. 1996).

## III.    Retaliation

Title VII prohibits retaliation against an employee who has engaged in activity protected by the Act. 42 U.S.C. § 2000e-3(a). Section 2000e-3(a) states that "it shall be an unlawful employment practice for an employer to discriminate against any of its employees . . . because [they have] opposed any practice made an unlawful employment practice by this subchapter, or

because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter." 42 U.S. C. § 2000e-3(a).

A retaliation claim is subject to the same *McDonnell Douglas* burden-shifting analysis. *Alexander v. Gerhardt Enter., Inc.*, 40 F.3d 187, 195 (7th Cir. 1994.) A plaintiff, however, must first establish a prima facie case of retaliation. To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *Jones v. General Electric Info. Serv.*, 3 F.Supp.2d 910, 918 (N.D. Ill. 1998). In order to establish a causal link, a plaintiff must demonstrate that the defendant "would not have take the adverse action 'but for' the protected expression." *Adusumilli v. City of Chicago*, 164 F.3d 353, 363 (7th Cir. 1998).

A causal link may be established by showing that a plaintiff's discharge took place on the "heels of [the] protected activity" *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994) because suspicious timing constitutes circumstantial, or indirect, evidence to support a claim of discrimination. *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). Thus, a short time span between two events can be enough for plaintiff to create a triable issue as to the required causal link. *See Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 939 (7th Cir. 1996) (finding that a reasonable inference on the causation issue arises when the adverse job action came two weeks after the filing of the EEOC complaint.) *See also Filipovic v. K&R Express Sys., Inc.*, 176 F.3d 390, 398 (7th Cir. 1999) (plaintiff could not establish a causal connection between the occurrence of the protected activity and adverse action because of a four month time lapse). Therefore, if there is a substantial lapse of time between a plaintiff's protected activity and a defendant's adverse action, the lapse of time is "counter-evidence of any causal

connection." *Johnson v. Univ. of Wis.--Eau Claire*, 70 F.3d 469, 480 (7th Cir. 1995).

## ANALYSIS

## COUNT I

In Count I, Plaintiff alleges that he was discriminated against on the basis of his national origin when Defendant discharged him from his position as senior physician in 1995. 2d Am. Complt. Defendant, on the other hand, asserts that Plaintiff is unable to produce either direct or indirect evidence that Defendant discriminated against him based on his national origin. Def.'s Reply at 1.

Plaintiff first argues that direct evidence of discrimination does in fact exist because Dr. Ziring made the following statement to Plaintiff: "have you had your tacos today." Pl.'s Resp. at 9. In order for isolated comments to constitute direct evidence of discrimination, they must be "'contemporaneous with the discharge or causally related to the discharged decision making process.'" *Kennedy v. Schoenber, Fisher & Newman, Ltd.,* 140 F.3d 716, 723 (7th Cir. 1998) (internal citations omitted). Moreover, "[s]tray remarks in the workplace . . . cannot justify requiring the employer to prove that its . . . decisions were based on legitimate criteria." *Price Waterhouse*, 490 U.S. 228, 277, 109 S.Ct. 1775.

In reviewing the record, this court finds that the above referenced statement was made on only one occasion, and while Plaintiff did not specify when Dr. Ziring made the comment, it was sometime after Dr. Ziring began working at Cook County Hospital in June, 1993, when Plaintiff and Dr. Ziring were on friendly terms. Def.'s Reply 3; Def.'s Local Rule 56.1(a)(3) ¶ 38. The court finds that Dr. Ziring's isolated comment to Plaintiff is not discriminatory on its face and that Dr. Ziring's statement was neither contemporaneous or causally related to the decision-making process regarding the elimination of Plaintiff's position which commenced no earlier

than summer, 1995. Therefore, the court finds that this statement cannot be viewed as constituting direct evidence of discrimination.

Plaintiff next argues that he can establish a prima facie case of discrimination using a *McDonnell Douglas* analysis. Pl.'s Reply at 9-10. Under the *McDonnell Douglas* framework, a plaintiff establishes a prima facie case of employment discrimination by showing by a preponderance of the evidence that: (1) he is a member of a protected class; (2) he was qualified for the job in question or was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) the employer treated similarly situated employees outside the protected class more favorably. *Foster*, 168 F.3d at 1035; *see Bragg*, 164 F.3d 373. Plaintiff asserts that he has met all four factors under *McDonnell Douglas* and has, therefore, established indirect evidence of discrimination.

Defendant, on the other hand, argues that Plaintiff has failed to establish a prima facie case under *McDonnell Douglas* because he cannot establish that others outside his protected class were treated more favorably under similar circumstances. Def.'s Mem. at 9. Defendant cites record evidence indicating that Dr. Ziring recommended the elimination of two Caucasian physicians' equivalent positions, Dr. Odell and Dr. Gordon, at the same time and under the same circumstances that he recommended the elimination of Plaintiff's position. Def.'s Reply at 3. Plaintiff, however, contends, that Dr. Odell and Dr. Gordon were not treated the same as Plaintiff because Dr. Odell resigned (after her position had been recommended for elimination) and Dr. Gordon filed a lawsuit against Defendant. Pl.'s Mem. at 10; Def.'s Local Rule 56.1(a)(3) St. ¶ 18.

Based on the record, the court finds that Dr. Ziring did in fact treat Dr. Odell and Dr. Gordon in the same manner as he treated Plaintiff because he recommended the elimination of

their positions at the same time as Plaintiff's in order to meet the required eight percent budget reduction mandate. The fact that Dr. Odell resigned after her position had been recommended for elimination and Dr. Gordon instituted a law suit against Defendant is immaterial. The court holds that Plaintiff cannot establish a prima facie case of discrimination for Count I because Dr. Ziring did not treat similarly situated physicians outside the protected class more favorably than Plaintiff.

In addition, Defendant's decision to recommend the elimination of these positions was based on a legitimate, non-discriminatory reason. *Vakharia*, 190 F.3d at 806. For instance, Plaintiff's position as well as Dr. Odell and Dr. Gordon's positions were recommended for elimination in order to allow the department to operate within its budgetary constraints while continuing to provide comprehensive care to patients. Def.'s Local Rule 56.1(a)(3) St. ¶ 19. Dr. Ziring was faced with having to make a difficult choice between eliminating programs designed to meet the needs of indigent children who had no available heath care and eliminating the positions of three senior physicians. *Id.* at 7, 16, 17, 19. Defendant used its business judgement and determined that the functions of the senior physicians could be absorbed elsewhere.

Alternatively, even *arguendo,* if the court could find that Plaintiff can establish a prima facie case of discrimination, Plaintiff would still need to prove that Defendant's proffered reason for eliminating his position was a pretext for discrimination. *Vakharia,* 190 F.3d at 806-07. Plaintiff offers two arguments to this end.[1]  Plaintiff argues that Defendant's explanation for its

---

[1]Plaintiff claims that Dr. Ziring "lied to his staff about his role in the termination, thus calling into question his credibility." Pl.'s Mem. at 11. Plaintiff presumably is referring to a letter that Dr. Ziring received from a group of physicians who protested the dismissal of Plaintiff and Dr. Gordon, which states that Dr. Ziring said to them that he "had 'only learned on Thursday [December 7, 1995]' the fate of your two staff members." The court finds that the letter constitutes inadmissible hearsay, pursuant to Fed.R.Civ.P. 801(c), and cannot be considered

budget reduction is a pretext for discrimination because Dr. Ziring did not recommend the elimination of Dr. Yu's position when he recommended the elimination of his position. Pl.'s Mem. at 10-11. Plaintiff asserts that Defendant's recommendation constitutes evidence of discrimination because Dr. Yu is not board certified in pediatrics and has less experience than Plaintiff. *Id.*

The record indicates that even though Dr. Yu is not board certified in pediatrics, that he is board certified in both allergy/immunology and internal medicine. Resp. to Pl.'s Local Rule 56.1(b)(3) St. ¶ 40. Dr. Yu is also certified to treat children with allergic conditions. *Id.* The evidence further shows, that in the past, when there has been a medical need, the Department of Pediatrics has employed internists who were board certified in allergy/immunology. *Id.* In fact, Plaintiff, who is not board certified in internal medicine, testified that he cared for adults with allergic conditions for many years at Cook County Hospital because there was no adult allergist. *Id.*

Dr. Yu was also rated as "superior" on his employee evaluation. Resp. to Pl.'s Local Rule 56.1(b)(3) St. ¶ 31. Furthermore, on his evaluation, it was noted that Dr. Yu was extremely hardworking, was well liked by his patients, and had handled most of the clinical responsibilities in the division. *Id.* The record shows, however, that Plaintiff had frequent meetings with Dr. Ziring and Dr. Moy (his supervisor) regarding his performance. Resp. to Pl.'s Local Rule 56.1(b)(3) St. ¶ 29. Dr. Ziring testified about Plaintiff's performance as follows:

A.    Dr. Odell resigned between the time that Dr. Ziring recommended the elimination

---

herein. In any event, Dr. Ziring's uncontradicted testimony was that he did not learn whether or not his recommended elimination of positions had been approved until December 1995. Resp. to Pl.'s Local Rule 56.1(b)(3) St. ¶ 42. Therefore, the subject statement to the physicians would not be a misstatement.

of her position in August, 1995 and the time that Dr. Ziring learned that his recommendation had been accepted by the Cook County Board of Commissioners in December, 1995. I'd like to answer the questions in two parts. The first part is that Dr. Moy and I had frequent meetings with [Plaintiff] to inform him that he was not performing his duties at the required level of competence. We, on the other hand, had not reached the point where we believed that his position, as an employee, was one in which we were prepared to refer it for peer review.

We counseled him repeatedly on his performance, his behavior, the patients, and his lack of responsiveness to our requests for his performing various duties that were part of the departmental mission, which he often did not carry out. We were having increasing concern about [Plaintiff] work performance.

However, if your question relates specifically to maintaining his position as an employee, that process requires a referral to peer review as a medical staff procedure, and that process we have not initiated.

Q.    [Plaintiff] was evaluated every year by Dr. Moy; is that correct?

A.    Yes.

Q.    Did [Plaintiff] ever receive an evaluation from Dr. Moy that indicated that he was performing his duties below the level of competence to maintain his position?

A.    [Plaintiff's] duties were many and diverse. His duties included seeing patients in the clinic, teaching residents and medical students, carry out research mission of the organization, and attending to administrative functions as I outlined earlier in my remarks.

In some areas, [Plaintiff] did well. He was very attentive to the needs of his patients. He was very devoted, especially to a certain number of patients that he had a long-term relationship with. His teaching function we felt needed improvement because he repeatedly taught residents and medical students based on his personal anecdotal experience, and not sufficiently backed up by materials based in the accepted medical literature.

He did not comply with a number of requests for working in [outlying] clinics, which I personally asked him to do. So there were areas where he performed at a reasonable level within his job description and in areas that did not perform well. *Id.*

Furthermore, in April 1995, it was noted on Plaintiff's employee evaluation that he needed better

organizational skills and tended to practice medicine that was not supported by medical

literature. Resp. to Pl.'s Local Rule 56.1(b)(3) St. ¶ 29.

On May 1, 1995, Dr. Moy wrote to Plaintiff, asking him to list his activities for the past year; including, the grants he had applied for, the manuscripts he had published or submitted to journals, the book chapters or review articles he had published, the progress of any research activities he was conducting, and any new programs he had initiated for patients, residents and students. Def.'s Ex. 29. Plaintiff responded as follows:

> The answer to question #1, 2 and 5 is none over the past year.
>
> I presented the abstract "Factors associated with Pediatric Intensive Care Unit Admissions in Asthmatics" in the ACAAI/94.
>
> I am writing three papers and I am doing two projects: "Beliefs about Asthma among Latin and black population" "Latex allergy in Cook County Hospital workers" and a paper relating to PFT, lung auscultation findings, and dyspnea.
>
> It would be helpful to have some Institutional, technical and secretarial support. Def.'s Ex. 30.

The court finds that based on the evidence presented that even if Plaintiff had sustained its burden of establishing a prima facie case under a *McDonnell Douglas* analysis that it would not have been able to prove that Defendant's proffered reason for its decision regarding its recommendation to eliminate Plaintiff's position was a pretext for discriminating against Plaintiff. It is clear from the record that Defendant's reason for retaining Dr. Yu rather than Plaintiff is that Defendant believed that Dr. Yu possessed superior qualifications to those of Plaintiff in terms of skill, productivity, flexibility and attitude. Dr. Yu was board certified in both allergy/immunology and internal medicine, had been highly rated on his employee evaluation, and held most of the clinical responsibility for the department. Moreover, Plaintiff was not performing as his supervisors thought he should and he had not published any materials or participated in any research activities. Therefore, Defendant's decision to retain Dr. Yu over

Plaintiff was based on Defendant's judgment that Dr. Yu would more closely fit the needs of the department.

In summary, the court finds that when viewing the evidence in the light most favorable to Plaintiff, that a fair-minded jury could not return a verdict for him on the evidence presented as it relates to his national discrimination claim under Count I. Therefore, the courts finds that there is insufficient evidence to create a genuine issue of material fact regarding Plaintiff's national origin discrimination claim.[2]

## COUNT II

In Count II, Plaintiff alleges that Defendant retaliated against him for filing a discrimination complaint in February, 1994 (as to the department chairmanship), when Defendant terminated him from his position as senior physician in December, 1995. 2d. Am. Complt.

In order to establish a prima facie case of retaliation, a plaintiff must show that (1) he was engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action. *Jones,* 3 F.Supp.2d at 918. Once a plaintiff has established a prima facie case, the *McDonnell Douglas* burden-shifting analysis applies. *Alexander,* 40 F.3d at 195.

A casual link may be established by showing that a plaintiff's discharge took place on the "heels of [t]he protected activity" (*Dey,* 28 F.3d at 1458) because suspicious timing constitutes circumstantial, or indirect evidence to support a claim of discrimination. *Troupe,* 20 F.3d at 736.

---

[2]In view of our holding herein, it is unnecessary to address Defendant's argument that Plaintiff's Count I claim is outside or exceeds the scope of the EEOC charge on which the Count I claim is based (1996CA1420).

*See also Filipovic,* 176 F.3d at 398 (plaintiff could not establish a casual connection between the occurrence of the protected activity and adverse action because of a four month time lapse). Thus, a significant lapse of time between the protected activity and adverse action is "counter-evidence of any casual connection." *Johnson,* 70 F.3d at 480. Citing a Fifth Circuit not Seventh Circuit case, Plaintiff, asserts, however, that here as in the case of *Shirley v. Chrysler First, Inc.,* 970 F.2d 39 (5th Cir. 1992) that retaliation can be established over a longer time frame; such as, a fourteen month time period between the occurrence of the protected activity and the adverse action.

In this circuit, a "telling" temporal sequence between two events requires the adverse action to closely follow the protected expression. *Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 510 (7th Cir. 1997)(no nexus where plaintiff's discharge occurred even five months after she filed a charge of discrimination)(internal citations omitted). In viewing the record, the Defendant concedes and the court finds that Plaintiff meets the first two parts of the three part retaliation test; however, he fails to establish a casual connection between his charge of discrimination and the elimination of his position. Specifically, based on the law in this circuit, which, without more, requires temporal proximity between the protected activity and adverse action, Plaintiff's termination in December, 1995 cannot be viewed as being causally connected to his initial complaint of discrimination which he filed twenty-two months earlier, in February, 1994. Moreover, Defendant has articulated, a legitimate, non-discriminatory reason for the elimination of Plaintiff's position. As stated, Plaintiff's position was eliminated to allow the department to function within its budgetary constraints while still rendering comprehensive care to its patients. Def.'s Local Rule 56.1(a)(3) St. ¶19. Plaintiff has offered no evidence by which to establish that Defendant's stated reason for the termination of Plaintiff's position was a pretext to conceal a

retaliatory motivation. The court, therefore, finds that there is insufficient evidence to create a genuine issue of material fact regarding Count II.[3]

## COUNT III

In Count III, Plaintiff alleges that Defendant discriminated against him on the basis of his national origin when it failed to either promote him in 1993 to the chairman position. 2d. Am. Complt.

To establish discrimination in a failure-to-promote case, the plaintiff must show that (1) he is a member of a protected class; (2) he applied for and was qualified for the position sought; (3) he was rejected for the position; and (4) someone not in the protected class was given the position who had similar or lesser qualifications. *Perdomo v. Browner*, 67 F.3d 140, 144 (7th Cir. 1995). Once a plaintiff has established a prima facie case, the *McDonnell Douglas* burden-shifting analysis applies. *Alexander*, 40 F.3d at 195.

Plaintiff initially argues that he should have received the promotion to the chairman position because he was clearly more qualified than Dr. Moy, and that he could have demonstrated this fact if Dr. Ziring would have granted him an interview. Pl.'s Mem. at 14. Plaintiff further contends that he previously held the chairman position in an acting capacity and that Defendant typically promotes potential candidates from within the hospital and Dr. Moy was recruited from outside of the hospital which demonstrates that Defendant discriminated against him. *Id.*

---

[3]Plaintiff also asserts in conclusory fashion that he began to experience adverse treatment after he filed his February, 1994 discrimination charge. However, Plaintiff fails to identify any such adverse treatment he experienced, and his assertion, respectfully, thus is conclusory and unavailing and cannot be considered by the court. Pl.'s Mem. at 12-13. *See e.g., First Commodity Traders, Inc. v. Heinold Commodities, Inc.* 766 F.2d 1007, 1011 (7th Cir. 1985); *Box v. A & P Tea Co.,* 772 F.2d 1372, 1378 (7th Cir. 1985).

In considering the evidence, the court finds that Plaintiff was interviewed and considered for the chairman position. For instance, in his deposition, Plaintiff testified that he met with Dr. Ziring shortly after Dr. Ziring arrived at Cook County Hospital to discuss his interest in the chairman position. Reply to Def.'s Local Rule 56.1(b)(3) St. ¶ 7. During that meeting, Plaintiff gave Dr. Ziring a copy of his resume, and they discussed Plaintiff's ideas about the division. *Id.* Plaintiff concluded the meeting with Dr. Ziring with the understanding that Dr. Ziring was considering him for the position. *Id.*

The evidence in the case does not support Plaintiff's argument that he was more qualified for the chairman position than Dr. Moy. For instance, in order to be qualified for the chairman position, an applicant needed experience in conducting research and the ability to attract research grants. Def.'s Local Rule 56.1(a)(3) St. ¶¶ 7, 10. Plaintiff's resume indicates that he has not been involved in any research projects since his fellowship in 1978 and that he had received no research funding. *Id.* ¶ 7. Dr. Moy's resume, on the other hand, shows that he received the Biomedical Research Support Grant from April 1989 through March 1990; the American Lung Associate Research Grant Award from July 1990 through June 1992; the Allen & Hanburys Respiratory Institute Basic Research Grant Award from July 1991 through June 1992; and the National Institute of Health-National Heart, Lung, and Blood Institute Shannon Award from October 1992 through September 1994. *Id.*

Moreover, Dr. Ziring testified that, "this was not a position looking for a doctor to provide more hands-on clinical services to children. It was . . . to develop new programs, new educational programs, new services, grant programs, new educational programs, and new relations with Rush which were evolving at that time." Def.'s Local Rule 56.1(a)(3) St. ¶ 10. Thus, based on Plaintiff's record, he had not demonstrated that he had the ability to lead as an

educator, to generate research grants or conduct research projects, or to develop and administer new programs. *Id.*

Dr. Moy, on the other hand, was highly regarded as a clinician and teacher, had conducted extensive research, received funding for research grants, maintained a faculty appointment and research laboratory privileges at Rush, and was committed to expanding new programs within the hospital and treatment services in the community. Def.'s Local Rule 56.1(a)(3) St. ¶¶ 4, 11. Accordingly, Dr. Moy's qualifications allowed him to lead in all four areas that Dr. Ziring had identified as encompassing the department's mission. *Id.* ¶ 7. Thus, Dr. Ziring concluded that Dr. Moy's qualifications for the position "far exceeded" the qualifications of Plaintiff. *Id.* ¶ 12.

The court finds that Plaintiff cannot establish a prima facie case of discrimination with respect to his promotion claim because he cannot establish that he was qualified for the chairman position and that Dr. Moy was not as qualified as Plaintiff for the position. Moreover, Defendant has articulated a legitimate, non-discriminatory reason for why it selected Dr. Moy to fill the chairman position.

In summary, upon a complete review and applying summary judgment standards, the court finds that there is insufficient evidence to create a genuine issue of material fact regarding Plaintiff's claim that he was discriminated against when he was not promoted to the chairman position.

## CONCLUSION[4]

Based on the foregoing, Defendant's motion for summary judgement is granted and the cause is dismissed with prejudice.

ENTER:

*Ian H. Levin*

IAN H. LEVIN
**United States Magistrate Judge**

Dated: April 16, 2001

---

[4]Plaintiff has agreed that summary judgment lies as to Count IV and he, accordingly, agrees to the dismissal of that count.